JUDGE FRANK MONTALVO

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED
2022 OCT 21 PM 2: 51
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| ERIK SALAIZ, | § § § |
| **Plaintiff,** | § § |
| v. | § § |
| FIRST AMERICAN HOME WARRANTY CORPORATION a California Corporation | § § § § § |
| **Defendants.** | § § § |

## EP22CV0373

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.     Defendant FIRST AMERICAN HOME WARRANTY CORPORATION ("American") is

a corporation organized and existing under the laws of California with its principal address at

1244 Apollo Way, Santa Rosa, CA 95407 and can be served via its registered agent Registered

Agent Solutions, Inc., at Corporate Center One, 5301 Southwest Parkway, Suite 400 Austin, TX

78735.

### NATURE OF ACTION

3.     As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant American telemarketers and agents placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5.      Defendant American offers home warranty services to consumers.  As part of marketing their services, Defendant American hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.      This Court has personal jurisdiction over Defendant AMERICAN because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant AMERICAN regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23.     Plaintiff's personal cell phone (XXX) XXX-1527 has been registered on the National Do-Not-Call Registry since March 6, 2022.

24.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25.     Defendant American offers home warranty to consumers.

26.     As part of their marketing Defendant American hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an automatic telephone dialing system ("ATDS") to solicit their home warranty policies.

27.     Defendant American approves of the contracts with these telemarketers.

28.     Defendant American authorizes the payments to the telemarketers.

29.     Defendant American pays the telemarketers out of bank accounts they own and control.

30.     Defendant American are well aware that the unauthorized phone calls being made on their behalf soliciting their home warranty services violate the TCPA.

31.     Defendant American knowingly and willfully violate the TCPA because doing so benefits them financially when consumers purchase one of their home warranty policies.

32.     Plaintiff received at least seven (7) unauthorized phone calls to his personal cell phone (XXX) XXX-1527 from telemarketers calling on behalf of Defendant American soliciting "home warranty" policies within a thirty-day period ("the calls").

33.     The calls all started with a 3-4 second delay of dead air followed by an audible beep (indicating the calls were made using an ATDS) before connecting Plaintiff to a telemarketer.

34.     Plaintiff has never had any relationship with Defendant American and never knew who Defendant American was prior to the calls being made to his personal cell phone.

35.     Upon information and belief Plaintiff has received additional calls within the past two years from or on behalf of Defendant American that are unknown to Plaintiff at this time and will be revealed during discovery.

36.     Defendant American has been sued in a class action lawsuit prior to this lawsuit for violating the TCPA *Abramson v. First American Home Warranty Corporation* No. 2:22-cv-01003-NR (W.D.PA., Jul. 09, 2022) and continue their illegal behavior because violating the TCPA benefits Defendant American financially.

37.     On September 12, 2022, Plaintiff received one of multiple calls from a telemarketer calling on behalf of Defendant American from phone number (915) 264-3667.

38.     Plaintiff answered and there was a 3-4 second delay of dead air followed by an audible beep before being connected to a female telemarketer named Elena.

39.     Elena advised Plaintiff the reason she was calling was to let Plaintiff know there is a promotion for his home warranty.

40.     Plaintiff was extremely aggravated, angry, and frustrated for continuing to receive calls from telemarketers soliciting "home warranty."

41.     Plaintiff continued the call with Elena for the sole purpose of identifying the company responsible for the calls.

42.     Elena then verified Plaintiff's address, email, name, and went over the details of what the home warranty policy from Defendant American would cover.

43.     Plaintiff asked Elena what company this was, and Elena stated, "this is Total Home Warranty" and falsely identified the company she was calling on behalf of.

44.     Defendant American trains there telemarketers not to reveal their true identity and say they are calling from "Total Home Warranty" in order to hide their true identity and duck liability for violating the TCPA.

45.     Elena then solicited Plaintiff for a home warranty policy on behalf of Defendant American and advised Plaintiff he would be charged $1 for a thirty day "trial" period then $58/mnth if he chose to keep the policy. Elena advised Plaintiff he would be receiving an email with the home warranty policy shortly to review.

46.     Elena provided Plaintiff with the customer service phone number (888) 875-0533 which is a phone number owned and controlled by Defendant American.

47.     Plaintiff was never charged the $1 and never received the email from Elena with the policy.

48.     On October 13, 2022, Plaintiff received a charge to his credit card for $71.50 from Defendant American, and on October 14, 2022, Plaintiff received a welcome email from

7

Defendant American regarding his home warranty policy. The charge and email Plaintiff received from Defendant American revealed the company responsible for the calls. *See Exhibit A.*

49.     Elena falsely solicited Plaintiff for a $1 thirty-day trial period for a home warranty policy on behalf of Defendant American.

50.     Plaintiff did not provide Defendant American with his prior express written consent to receive the calls.

51.     Defendant American's website they own and control is

https://homewarranty.firstam.com.

52.     Defendant American spoofed the caller ID numbers when calling Plaintiff to a (915) area code to trick Plaintiff into thinking the calls were local.

53.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendant American:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 08/26/2022 | 1:32 PM | 915-975-3876 | Call from Male telemarketer soliciting home warranty |
| 2 | 09/01/2022 | 8:35 AM | 915-455-6574 | Call from Male telemarketer soliciting home warranty |
| 3 | 09/01/2022 | 12:14 PM | 915-929-2699 | Call from Female telemarketer soliciting home warranty |
| 4 | 09/02/2022 | 9:26 AM | 915-929-3265 | Call from Male telemarketer soliciting home warranty |
| 5 | 09/06/2022 | 1:18 PM | 915-929-5994 | Call from Male telemarketer soliciting home warranty |
| 6 | 09/07/2022 | 1:50 PM | 915-264-3667 | Call from Female telemarketer soliciting home warranty |
| 7 | 09/12/2022 | 1:56 PM | 915-264-3667 | Call from Female telemarketer Elena soliciting home warranty. Purchased policy. |

54.    Defendant American employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

55.    Defendant American and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their home warranty policies.

56.    Defendant American have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendant American knew full well that their telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant American. Defendant American willfully accepts these referrals and compensate the telemarketers for their illegal unauthorized phone calls.

57.    Defendant American refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant American financially.

58.    Defendant American is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us.telephonesearch.asp website ("Texas Registration Database") does not contain Defendant American's registration.

59.    Defendant American does not qualify for an exemption under § 302.053.

60.    No emergency necessitated none of the alleged phone calls.

61.    Plaintiff sent an internal do-not-call policy request to Defendant American to email social.support@firstam.com on October 18, 2022, which is an email listed on their Facebook page they own and control https://www.facebook.com/FirstAmericanFinancial.

62.    Despite this e-mail, Defendant American failed and/or refused to send Plaintiff a do-not-call policy.

9

63.    Upon information and belief, the Defendant American did not have a written do-not-call policy while it was sending Plaintiff the calls.

64.    Upon information and belief, the Defendant American did not train their telemarketers who engaged in telemarketing on the existence and use of any do-not-call list.

65.    Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

66.    Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT AMERICAN

67.    Defendant American is vicariously liable for the telemarketing calls that generated the lead on their behalf.

68.    The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

69.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

70.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

71.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

72.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

73.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

74.     To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

75.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

76.     Defendant American is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

77.     Defendant American knowingly and actively accepted business that originated through illegal telemarketing.

78.     Defendant American knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

79.     By hiring a company to make calls on its behalf, Defendant American "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

80.     Moreover, Defendant American maintained interim control over the actions of its telemarketers.

81.     For example, Defendant American had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

82.     Furthermore, Defendant American had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant American and the ability to require them to respect the National Do Not Call Registry.

83.    Defendant American also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

84.    Defendant American donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "home warranty" services in the abstract.

85.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

86.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

87.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

88.    Defendant American's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant American. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

89.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

90.    Defendant American is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for home warranty services on their behalf.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

91.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

92.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

93.    The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

94.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

95.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

96.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

97.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

98.     Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

99.     Defendant American's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

100.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendant American.

101.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

102.    The calls were to the Plaintiff's cellular phone (XXX) XXX-1527, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

15

## CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

103.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104.    Defendant American and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

105.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B) by Defendant American by the telephone calls described above, in the amount of $500.00 per call.

106.    Plaintiff was further statutorily damaged because Defendant American willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

107.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant American and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

108.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

109.    Defendant American called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

110.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by Defendant American by the telemarketing calls described above, in the amount of $500.00 per call.

111.    Plaintiff was further statutorily damaged because Defendant American willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

112.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

113.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

114.    The foregoing acts and omissions of Defendant American and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a.   A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b.   Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c.   In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

115.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

116.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of The Texas Business and Commerce Code 305.053)

117.   Plaintiff incorporates the foregoing allegations as if set forth herein.

118.   The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using An ATDS that does not comply with the technical and procedural standards under this subsection.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

119.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such

violation. **Texas Business and Commerce Code 305.053(b).**

120.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing

or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FIVE

## (Violations of Texas Business and Commerce Code 302.101)
## Failure to obtain a Telephone Solicitation Registration Certificate

121.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

122.    Defendants made at least seven (7) solicitation sales calls to Plaintiff without having a

valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.    As a result of Defendant and Defendants' agents' violations of Tex. Bus. and Com. Code

302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com.

Code 302.302(a).

124.    As a result of Defendant and Defendants' agents' violations of Tex. Bus. and Com. Code

302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs,

deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendant jointly and

severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified

and to conform to the evidence presented at trial;

19

B.      A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for seven calls.

E.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for seven calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.      Such further relief as the Court deems necessary, just, and proper.

October 21, 2022,                          Respectfully submitted,


Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com

Gmail - Thank you for choosing First American!

 **Gmail**

‹salaiztransportation@gmail.com›

---

## Thank you for choosing First American!

---

**First American Home Warranty** ‹Do_Not_Reply@home-warranty-info.com›
Reply-To: Do_Not_Reply@home-warranty-info.com
To: SALAIZTRANSPORTATION@gmail.com

Fri, Oct 14, 2022 at 9:01 AM

Your coverage is now active.





Your new home warranty is now active. Homeownership can come with lots of surprises. Lucky for you the unexpected costs of covered systems and appliance breakdowns won't be one of them.

## Visit **fahw.com** today to activate your account and get started. There you can:

Request service 24/7

EXHIBIT A

Gmail - Thank you for choosing First American!



View service request status

Send us messages about service requests

View your coverage

Make payments

**COMMERCIAL MESSAGE** | UNSUBSCRIBE

**Please do not respond to this email.**

P.O. Box 7248, Santa Rosa, CA 95407

© 2022 First American Home Warranty Corporation. All rights reserved.

First American Home Warranty Corporation makes no express or implied warranty respecting the information presented and assumes no responsibility for errors or omissions. First American, the eagle logo, firstam.com, and First American Home Warranty Corporation are registered trademarks of First American Financial Corporation and/or its affiliates. First American Home Warranty Corporation also operates as First American Home Warranty Corporation of Florida in the state of Florida.

FA_DTC1EB_7_18

INOW:5000001241016000000010787309501|0000000000000000|0000000000000000|CMSWEDTC1..................|

**EXHIBIT A**


Screenshot_20221013-052021_Capital One.jpg

# Details

# $71 50

Pending

## FIRST AMER HOME BUYER



Made by Erik Salaiz...9492 on Thursday, October 13, 2022

REPORT A PROBLEM

    

**EXHIBIT A**